The next argued case is No. 18-2265, TriPlay, Inc. v. WhatsApp, Inc. Mr. Weider. May it please the Court. My argument will focus on two points. First point, TriPlay's template claims are directed to a novel solution that improves computer efficiency in two ways. One, it reduces the need for the messaging system's computers to form content analysis of received messages, and it streamlines the computer's message conversion by enabling the use of predefined layouts adapted for each template type and device capability. The Court's high-level characterization of the claims as directed to the abstract idea of converting and forwarding messages was error. It was untethered to the concrete claim limitations, giving rise to the invention's computer efficiency. Second, my second point, the District Court erred in finding that the representative claims lacked an inventive concept as a matter of law. The Court's conclusory finding ignored the detailed analysis of his magistrate judge, identifying numerous outstanding fact issues precluding resolution of conventionality at the pleading state. Turning to my first point, as this Court has found several times, software innovations are patent-eligible at step one, where the focus of the claim is a specific improvement to the function of the computer. Can I ask you something? I understood that your first technical improvement is it improves the computer processing, it makes it easier for computer processing, and excuse me if I'm not saying it exactly the way you did, because of the use of templates. Correct. And I think the response that is made to that by the PTO is that you didn't invent templates that you had made even in your own patent specification that templates had been created by others. Correct. And so how do you respond to that? The response to that is that what we invented was a particular use of templates with unique identifiers, and so the templates are associated with a particular content. And because the templates are defined associated with a particular content, and because there's a unique identifier associated with that, when the system receives the message, it reads that unique identifier, and thereby once it reads that unique identifier, it knows the content of the message. It's not any use of templates. One of the arguments that's made is that the benefits of templates are, you know, in any context, provided. I mean, that's just not true. Just to take a routine example we all might know, when we go to send a message in Microsoft Outlook, we get a template to fill in information. But that's not the patent. It's not associated with any unique identifier. It's not used in the context of a particular messaging system to provide particular benefits. A computer before it can do the conversion of a message from one format and layout type to another needs to know what the content of the message is. And that requires the computer to execute instructions to ascertain what actually is in the message before it then moves on to the step of doing the conversion. And by virtue of the fact that this system designed a messaging system process that included a template with a unique identifier, as soon as the messaging system receives that thing in one step, it knows the content of the message. So that's the first benefit that I described. And if we just... Yes? Why is that something different from, you know, we have a memo template, a letter template, an opinion template, and this is called a one, two, three. So you send one. And now the computer knows, I know which template to use. Right. Because I've got, you know, I've got... Right. So a computer can have three or four templates in order to generate a different kind of memo, for example. Right. But that template's not part of a whole integrated design, which is what we have here, which is the messages are defined based on templates. And they have a unique identifier associated. And built into the messaging system is the receipt of that identifier, which points to what the content of the message is. Is your argument that by having templates and unique identifiers, that creates advantages specifically with respect to converting the message from one format to another? Well, it has two benefits. So the first benefit is, in the prior art, without this invention, the first thing a messaging system has to do when it receives the message is execute computer instructions to figure out what's in the message. And because this messaging system is designed with a template with a unique identifier, as soon as it receives the identifier, it knows the content of the message because that unique identifier is associated with a template that has a particular content. So that's the first benefit. The second benefit... Why isn't that a benefit in a system that's not sending it? For example, the system that Judge Toronto is referring to. Well, if we're talking about, like, example in Microsoft or whatever, where we can pull it a different template, can you give me your example again, I'm not sure. When you say it identifies the content, do you mean essentially the way it should be formatted on the screen? It doesn't identify what words are in the substance of the message. It will identify, for example, we're dealing with a multimedia message. So for example, if we look at Table 1 in the 475 patent, which is in Appendix 54, it identifies that you have various template types and they have a content structure associated with those template types. So for example, it would know, is it a picture? I think I got hung up on you saying it tells you the content. You mean sort of the content structure. Correct. Okay. Right. Correct. Right. So when we're talking about a picture of the... So my example was, say in this court, we have memo format, opinion format, letter format, and we call them A, B, C. And so a message that's sent with the words that will go into this thing says, A, and now suddenly the recipient knows, okay, I know what to make that, put it in a memo format. Or B, I'll put it in an opinion format. Is that what we're talking about? No, we're not, because what we're talking about here is a messaging system. It's dealing with the problem of different devices with different capabilities and different types of content. So the messaging system sits in the middle of the sending device and the receiving device. And what it does is it has to ascertain what that content is. Not just, it has to know whether we're talking as a video, is it a picture, what kind of format it is, what sort of objects I have to deal with. And in that type of a system, without a template that defines what that content structure is, the system has to execute a number of instructions to figure it out. And that's why the patent referred to this as novel and referred to the advantages over the prior art as a reduction in need for content analysis. Because by constructing this system with a template and a UCAR identifier, as soon as it receives that identifier, it knows all the details and then more importantly, but also, the other part of the invention is because the system has templates with particular content, it has the ability to generate, in advance, predefined, adapted layouts that go for every different device type. So if I get template one, I can go exactly to where that is in the claims. If you go to, this is part of representative claim eight, and if we go to appendix at the 677. With that, I'm on the 475. Claim eight? Okay. Representative claim eight of the 475, and I'm at appendix 56. And you're going to walk it all the way back to claim one? I'm going to walk it back to claim six. Okay. Okay. And if we go to the last clause of that, which says, said selection and conversion being done in accordance with at least one predefined layout, corresponding to the recognized unique identifier, and displaying capabilities of the destination communication device. So, this is the step that happens after the very first step, which is receiving a message that has a template and unique identifier. So, at the first step, it knows the content of the message. And because it knows the content, it can have predefined layouts. An example of those in the specification to show what we're talking about is at table two, appendix 55, which is this idea of for each template type, you have a different layout depending on the device capability. Now, without this, it would be necessary in the prior art to generate the layout on the fly, because you have no idea what your incoming content is. If you keep on talking about content and how the template tells you the content, the problem I'm having is the only thing I see in the claim is that the layout is based on a template or the template might dictate the layout. But there's nothing about content. Maybe I'm missing something. Well, so if we just go back to the message template here, if we want to turn, for example, to appendix 50, is a message template is used in the patent specification should be expansively construed to include any kind of predefined user interface with the content and or layout transmitted. Typically, a template comprises pre-executed text and or spaces to be filled and or media items and menu elements and or buttons. And if we also look, for example, as we talked about at table one, which shows exemplary templates with content structure. And the whole nature of this invention is about defining messages based upon what content is going to be in them, defining them in advance. So, I mean, part of the claim here when we're talking about a layout, which is just basically what's construed, if I remember correctly, as basically a visual representation, we're just talking about... Was the term... Yeah. Was the term, so template was construed? Oh, template has it. I'm just reading the, it wasn't separately construed from the definition that's in the specification, which I just read. Layout was construed to be a visual representation. So what we're talking about here, we're talking about a message having a layout based on a template. It means we're defining the elements that are in that message based upon a template. And because we've defined the elements that that template consists of, we therefore know what's in the message. And that's why the patent talks about a reduction in need for content analysis, because we have that content in advance. I'll now turn to my second point, which is this court erred in finding conventionality as a matter of law. This case is at the pleading stage, and as this court's decision in Berkheimer and Atrix make clear, whether a combination of elements would have been well understood, routine, and conventional to a skilled artisan is a question of fact. Those cases also emphasize that the challenger bears the burden to come forward with evidence that the additional elements are well understood, routine, and conventional. For example, an emission, a spec, or otherwise. Of particular significance here, the representative claim nine of the 677 patent was before an that were brought, three of them to read on the template. They keep arguing that this is conventional. It was not conventional to design a messaging system around a template with a unique identifier, and there's no evidence to support that. And further supporting our position is the magistrate judge's detailed step two analysis which set out numerous reasons supporting his conclusions of conventionality couldn't be decided as a matter of law. The benefits were cited in the specification for both the template and the video claims, the absence in the IPRs of prior art with templates of social particular content, and the need for a more well-developed record. Now, you're discussing prior art, and to try and keep straight where we stand, you're seeking a remand under, a reversal under Section 101 and a remand for the district judge to consider 103? Yeah, let me be really precise. I mean, our first position is that these claims should be non-abstract at step one. To the extent the court disagrees with us at step one, our position is there ought to be a remand on the step two conventionality question. The district court judge identified, I'm sorry, the magistrate judge identified numerous issues of conventionality. We submit they haven't come forward with any evidence to show conventionality. All the evidence points the other way. We have an IPR in which they put forward six references and it wasn't instituted. Three of them went to the template claims. We have, they haven't come forward with any evidence of conventionality. They've cited a variety, a couple of cases that mention a template in passing, but as the district court judge said in his decision, that those template decisions are different, and that difference further supports that it's non-conventional here. We just basically have the district court saying, well, this is a benefit of templates in any context, and we submit that's not the case. Did you preserve this argument below? Did you argue Berkheimer below? Yes. Okay. Yes, we did. Yes, Berkheimer came after the magistrate and before the district court, but we did argue it. And that's partly why we also, among our third arguments, is we have a fourth amendment complaint that we filed because the district court claimed there were certain details missing. All right, let's hear from the other side and we'll save some time. Thank you, Roxy. Mr. Bell. Good morning, Your Honor. May it please the court. I'd like to first start with what's not at issue here, and what we know is that Claim 1 of the 475 patent stands ineligible under Section 101. The district court so held, and that's not challenged on appeal. That claim includes the basic concept of receiving messages, converting them so that they can be compatible with the recipient, and it recites certain components, an access block and a media block. The district court rightly found that those are dysfunctional labels. So really what we're dealing with here is do the other three claims at issue tack on enough stuff to change the conclusion for those claims? Can I just ask you, I guess as a doctrinal or procedural or something matter, is it really right that we accept as a given the 101 ineligibility of Claim 1 here? Just because it's not appealed? I mean, you don't get issue preclusion. You don't get, I don't know, what's the doctrine if that's what you're saying and you may not be saying that? I think we're essentially saying that in the following way. In their brief, they didn't raise an issue that anything about Claim 1. Okay, that's a much simpler point. So they're really, it's okay for litigants to abandon arguments and only present to us what they think is their best argument, right? Sure. And so here they're presenting to us, hey, we don't think our best argument is in Claim 1, we think it's in Claim 8. Right. Okay. Right. And so what we do then is take as a baseline what they're not asserting. This court has said you look to what the patentee is asserting as the inventive concept. I mean, even today they're not arguing anything about Claim 1. They're arguing really emphasizing the templates and the unique identifiers, right? Exactly. And saying there are specific technological improvements based on that technology that they've developed. Exactly. So what's your response to that? The response to that is a couple fold. One, this looks exactly like or very, very similar to like claims that were at issue in the semantic case. The semantic case involved claims, and this was the 142 patent in that case, for receiving electronic messages in a receipt mechanism using a rules engine to match the attributes of the incoming message. It said look at an attribute, match it to a rule to determine how to output it. And then you output it to the destination in a certain configured way. And I actually pulled the patent this morning from that case, and fortuitously the patent in that case, and that's the full number is 6073142. Now let's stick to this case. Sure. These are fact-specific issues throughout. Yes, Your Honor. So certainly looked at in that lens and other claims that this court has found ineligible, what we see is that- They're not conceding that a claim that they're not specifically focused on, that that subject matters in the prior art. They're just putting together forward what they need to obtain claims that will help them. Right, and we can see exactly what they're claiming, Your Honor, as the inventive concept at page 47 of their brief. That's where they walk through the supposed benefits of these templates. And the supposed benefit, number one, is that it allows for reduced content analysis on the front end. You get a form and a certain number, you know where the stuff is going to be, so that you can very easily then on the back end output it in a predefined template. That's what number one and number two they're saying are the benefits here. And we know those aren't improvements in computer technology from what this court has said. For example, another claim in the semantic case had a file content identifier that allowed the system to immediately look at that identifier, know whether it was spam, and then know how to deal with it. This court said no, that's an abstraction. So your argument is that the unique identifier itself, assigning a unique identifier to a template in itself is an abstract idea? Yes, yes, and including that within even all the steps that they point to at page 47. Recognizing it based on that and then taking some action based on that are all abstract concepts that aren't rooted in computer technology. And that's the key point. That's not how the law works. Every invention starts with a concept. And the fact that it is implemented with steps that are novel in combination is what you look for in the law. Well, I would respectfully tweak that a little bit, Your Honor. This court has held that for the 101 inquiry, whether or not they ultimately survive under 102 and 103, meaning whether the exact steps in this claim are found somewhere in the prior art, is of, quote, no relevance. This court found in the semantic case and has repeated that in several cases. And so what that means is we can assume, for purposes of this argument, that the steps that they've recited in the template claims don't… But you have an inventive concept. The Supreme Court has resolved that. If there is an inventive concept in the steps or the combination of steps, then that resolves Section 101. I agree with that, Your Honor. And the Supreme Court and Alice resolved exactly that question. And so the question becomes, what is a significant enough inventive concept to satisfy the Alice test? And so what we have are this court's benchmarks. For example, the Internet Patents Court case. In that case, it was claims directed to conserving, storing data in the Internet context so that when a user went back and forth within a browser, it maintained the context. And notably in that case, the claims involved templates. They also involved icons that were clickable. And this court looked at those additional limitations and said those are just kind of routine add-ons. The underlying idea of the claim in that case was storing the data. And here… So here, in this case, they're saying, I understand what you're saying. And I appreciate that semantic and Internet patents are the cases you think that at least two of the cases that best support your position. But what about the argument here that this invention of assigning a unique identifier to a template and then, you know, having different templates on the sending end versus the receiving end, which facilitates the conversion process, how do you respond to the specific argument that that is a technical improvement to the communication system by reducing the amount of time it takes for the computers to process the conversion? Well, putting aside that this court has already seemingly rejected exactly that argument in semantic, I think the answer would be that it's directly analogous to conduct that is very familiar to humans. For example, take this court's form number 9. When this court, or the clerk's office specifically, receives form number 9, which has the COI information on it, certificate of interest, it immediately knows by the number or the title what this is and what the information is at where I'm going to find it. The clerk's office can then take that, convert it into another format for the purposes of the members of the court so that they know if there are conflicts of interest and stick a sheet on top of the case materials. That reads almost identically on the claims that they're relying on here, the template claims. You have a template coming in. You recognize it. You know what format it's going to go out in. You convert it to that. You don't have to think about it. You just do it. And so by analogy, that's the way this court proceeded in cases like content extraction, like semantic, like the first Capital One case, where it said if this looks basically like things that humans have done, it isn't enough to just take it and set it in an electronic context, whether it's electronic messages or the internet. The court below didn't rely on an analogy like that. Do I remember correctly that the court below instead said the idea of templates and identifiers to identify templates is disclosed in the patent as being already developed? It did. What it did, it did point to the specification, and in the specification at column two, there's a Hawaiian reference that talks about templates in the electronic context. Now that doesn't mean that all the steps in their claims were included in that prior art. That's not the inquiry. What it shows is that templates were well familiar to those in the art, and so putting them together in a different order of steps doesn't suddenly make it eligible. But now the patent is the patent doesn't disclose that assigning a unique identifier template is conventional, or does it? No, I don't believe it does. Okay. I don't believe it does. But we know that's just putting a label on something, whether it's a person's name, whether it's a courthouse address, whatever it is. An identifier is something that everybody is familiar with, and actually in the Symantec case, the file content identifier was asserted by the patentee as the central advance precisely to make things more efficient so that you could recognize it coming in. Exactly the benefits and the steps that they're asserting somehow make these claims inventive. Can you address the relevance? I'm going to build a little bit into this, I ask you to assume. The relevance of the non-institution decisions with the IPR and without relying on a broad assertion that any determinations under 102 and 103 are irrelevant to 101 stated that broadly that can't possibly be right. Understood, Your Honor. So here's how I'd approach that question. I would say let's assume that they're novel and non-obvious over the prior art for purposes of this argument. And in fact, that was the exact situation in Symantec. There was a jury finding that the claims were in fact novel and non-obvious over the prior art. And nonetheless, the court said we're going to look at 101 as a distinct inquiry. This court has said that there may be some overlap between the two. And what I think this court means is that at some conceptual level, both look at things that came beforehand. But they are distinct tests. 102 looks for the exact elements in the prior art. 103 looks whether you combine them obviously. Including, I think this is the point that is in my head. I guess I want to know what you think about it. In 102-103, you look for what's in the prior art, even if that thing in the prior art is itself abstract. Correct. And I think your point here is that these things that are asserted to be inventive are abstract. So it doesn't matter if they're new or non-obvious. Precisely, Your Honor. And that's what the SAP case stands for. In that case, the asserted improvement was itself an abstraction. Admittedly, it was implemented on a computer. And it didn't necessarily appear in the prior art precisely as claimed. But if it's just an abstraction, that's not enough to get over the Alice hurdle. And that's not enough on the pleadings in cases like Internet Patents Corp., in two-way media, where, to Your Honor's point about other proceedings, including PTAS proceedings, in that case, there was an assertion by the patentee that you should have considered this expert testimony on novelty. And you should have considered PTO proceedings relating to novelty and non-obviousness. And this court said, well, that's a little bit different. And so the district court was right not to rely on those. And for the same reason here, those same things don't create a fact issue, just like there weren't fact issues in the 13 or so cases decided on the pleadings. Here, since Atrix, or the 36 or so that have been decided here on the pleadings since Alice. I would like to address one point on the video claims, which my friend didn't focus on. But I did want to call out one thing in their reply brief that we didn't have a chance to respond to. At page 6, they say that it's undisputed, it's undisputed that the claims require the system to be able to replace the incoming video with a link in the outgoing video. And I just want to clarify that that is inaccurate. If you look at the claim construction here at A2272. So what significance, I think I had a glimmer of an idea, but I've lost it. Why do you think it matters even a little bit whether the clickable link is supplemental to the full video or stands alone? Ultimately, it doesn't matter. But it's easy to resolve that issue at the first level because all of the benefits that they assert, the savings in bandwidth. It's shedding the larger file. It's shedding the larger. So if the claims don't even include that, you don't need to get to the rest. But obviously, we've detailed why we think even if you do get to the rest, it's exactly like Affinity Labs and other cases where there are links to video streaming. And if the court has no further questions, thank you very much. OK. Thank you, Mr. Bell. Mr. Whiter, you have your rebuttal challenge. So a couple of points to emphasize. One, this is about the combination steps, a combination of a number of elements that arrive at the invention. They reference internet patents. I like to reference, and we reference this in our brief. But in the magistrate judge's decision report and recommendation at appendix 3231, he analyzed this case and find it's different. I mean, it has templates mentioned in it. But as the district court said, there's nothing in that decision to show that the templates had anything to do with the invention of maintaining state. And after analyzing the various cases they cited, he concluded that it only strengthens his view that these are not conventional, because the references that they're citing to are all very distinct. And Your Honor's right. These are all unique fact questions, fact-dependent. So I'm going to get to some of the other points. The Wang reference that they used to say that templates were conventional, it's cited in the background. All that describes is creating a message with a template. It doesn't talk about a U-cut identifier. It doesn't talk about doing it. A unique identifier is just, give me a way of knowing that when I'm looking for templates, I get the right one. But Your Honor, it's the whole design of this system that involves the idea of designing a messaging system where you start out with a set of predefined messages that have content structure associated with them and attach them to a unique identifier. And because of that idea flowed the benefits, and that's what the court needs to look at. At some level, from our perspective, this feels like they're trying to jam a 103 argument into 101. What they're really saying to the court is, well, aren't templates around everywhere? And wouldn't somebody else have thought of this? But nobody else did think of it. What's happened at the IPR is further evidence that this was novel. This was a way of providing a benefit in a messaging system that hadn't been thought about before, and it has a concrete benefit. I mean, nobody's arguing, or maybe they're sort of arguing, but the clear benefits of reducing the need for content analysis and allowing adapted layouts to different template types, because you know what's coming in advance, are all benefits that flow from this idea. The reference to the court form system, I'm not even sure how that even applies here. Forms have been used, as long as computers have been around, to load information that can be populated in a database. And it's not even clear to me what this court does with those forms or how they work, but it's not a messaging system. They're not being sent to some other person. Nobody's doing a conversion of it. There's not a reference of... I think Mr. Bell referred to a conversion in the sense of taking the information in fields and then using it for, among other things, conflict checks. Yeah, reports or whatever. But that's a concept of preparing forms so information gets loaded consistently in a database so somebody can run a report. It's been around forever and something totally different than this patent. One of the things I'm struggling with a little bit is that the claim uses the word template and it's not clear what's meant by template, how broad it is. Is it just like in our court or something where one's a letter and one's a vote sheet? I'm sorry, Your Honor. But it sounds like maybe the advantages you have with making the convergence simpler is that your template is talking about the difference between different kinds of media, maybe something with video versus something that is simply an email without any embedded content. And so, again, going back to where is it specifically that I'm going to understand this narrow meaning of template that you seem to be asserting? So if we go to appendix 50, column 11, is the definition in the patent of a template. That's astonishingly broad. I mean, that doesn't even limit it to layout. Your Claim 8 eventually does, but that definition of template... Well, so there are two things. It certainly limits... Content and or layout. Okay, it includes, it's construed to include any kind of prezi user interface related to the content and or layout, typically the template comprises preexisting text and or spaces to be filled and or media items and or elements. I mean, the claim limitations have to be viewed in light of the specification. And nowhere in here, before standing here today, was there an objection raised that, well, these templates don't include content. Where in the claims at issue is there, I think Judge Stowe was asking you about, essentially the multimedia nature of what's being transmitted and templates for that. Where is that found in the claims at issue? Well, I mean, it refers to the idea of... I mean, the whole background and discussion of the invention is an invention to deal with cross-platform messaging of different device capabilities. And it refers to here the idea of, if we look at claim six and go to line nine, where it says the media block is further configured to select before transmitting at least one message format and layout for each of the at least message formats fitting to each of the at least one destination devices. This is all regarding the notion that messages are being received with different media items and different devices have different capabilities. And the whole discussion in the patent that even precedes the template discussion, which describes the messaging system generally, talks in significant detail about receiving different media items. So when we're talking about here... Does the term media block have a construction limiting it? Yes, it does. I'm sorry. Yes, and what is that? It has a construction. You happen to remember? It's construed to include a transcoder, for example. A transcoder is designed to convert messages from certain formats to other formats. It includes message manager. There's certain, if we want to look, for example, the quickest way I can answer your question is if we go to appendix 40, for example, which is figure eight. And so it shows a media block there, including a transcoder and a message manager. And there may be another piece in there that I'm forgetting about. But this is the engine of the messaging system that receives messages of different types of content and has a transcoder in there to convert from one format to another. And again, we're not claiming to have invented a transcoder, but we've invented all these pieces of a messaging system that has this benefit. Am I right that Hwang, you talked about templates in the context of a multimedia transmission? Well, what Hwang refers to is it talks about a method disclosed in a multimedia sharing method for email message recipient involving integrating the file into a template. I mean, that's all the information we have, but it's not showing the concept of having a unique identifier so the messaging system knows what's in the message. It could provide the benefits. And as this court said in Berkheimer, the mere fact that some part of a thing may be referenced in a piece of prior art doesn't render it conventional. Because again, we're talking about the particular arrangement here that provides the benefits. Okay, any more questions? Thank you. Thank you both. The case is taken under submission.